1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10   PARKSIDE/EL CENTRO                    Case No.:  3:20-cv-01732-JAH-DDL
     HOMEOWNERS ASSOCIATION, a non-
11   profit mutual benefit organization,   **ORDER:**

12                              Plaintiff,  **(1) DENYING DEFENDANT'S**
13   v.                                     **MOTION FOR SUMMARY**
                                            **JUDGMENT;**
14   TRAVELERS CASUALTY
15   INSURANCE COMPANY OF                   **(2) DENYING PLAINTIFF'S**
     AMERICA,                               **MOTION TO AMEND;**
16
                              Defendant.    **(3) DENYING PLAINTIFF'S**
17                                          **MOTION FOR PARTIAL**
18                                          **SUMMARY JUDGMENT**
19
20                                          **(ECF Nos. 57, 23, 16)**
21
22                      __INTRODUCTION__
23        Pending before the Court is Defendant Travelers Casualty Insurance Company's
24   Motion for Summary Judgment, (ECF No. 57), and Plaintiff Parkside/El Centro
25   Homeowners Association's Motions to Amend, (ECF No. 23), and for Partial Summary
26   Judgment, (ECF No. 16).  Defendant filed responses in opposition to Plaintiff's motions,
27
28

(ECF Nos. 19, 30), and Plaintiff subsequently filed replies, (ECF Nos. 22, 32).[1] Additionally, Plaintiff filed a response in opposition to Defendant's Motion for Summary Judgment, (ECF No. 65), to which Defendant filed a reply, (ECF No. 69). Upon consideration of the aforementioned motions, responses, replies, exhibits, and the relevant law, IT IS HEREBY ORDERED Defendant's Motion for Summary Judgment is **DENIED**, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and Plaintiff's Motion to Amend is **DENIED**.

## BACKGROUND

### I.    PROCEDURAL BACKGROUND

Plaintiff filed this case on September 3, 2020, naming Travelers Casualty Insurance Company as the only defendant. ("Compl", ECF No. 1 at 1). Plaintiff brings two claims against Defendant for (1) breach of contract and (2) breach of the duty of good faith and fair dealing. (Compl. at ¶¶ 30-40). Defendant filed an answer on October 29, 2020. (*See* ECF No. 9). Subsequently, on January 6, 2021, Plaintiff filed its Motion for Partial Summary Judgment, asking this Court to find as a matter of law that Plaintiff's ex-manager, Linda C. Heater ("Heater"), was not an "insured" under Defendant's Directors and Officers Policy ("D&O Policy"). ("Pla's Mot. for Part. Sum. Judg", ECF No. 16-1 at 4). Based upon Defendant's response, which argues all employees are considered "insureds" under the D&O Policy, ("Opp. to Mot. for Part. Sum. Judg", ECF No. 19 at 25, 26), Plaintiff filed a Motion to Amend to add a third cause of action, civil fraud, claiming Defendant knowingly misrepresented who is considered an "insured" under the D&O Policy. ("Pla's Mot. to Amend", ECF No. 23-1 at 2). Subsequently, Defendant filed its Motion for Summary Judgment on September 3, 2021. (ECF No. 57 at 1).

---

[1] Defendant also filed requests for judicial notice in support of its motion for summary judgment and in opposition to Plaintiff's motion for partial summary judgment. (ECF No. 57-4 at 1; ECF No. 20). Pursuant to Federal Rule of Evidence 201, the Court grants Defendant's requests for Judicial Notice.

## II.   FACTUAL BACKGROUND

Plaintiff is a nonprofit mutual benefit corporation and homeowners' association located in the County of Imperial in the State of California.  (Compl. at ¶ 5).  Defendant is an insurance provider that issued a D&O Policy to Plaintiff, covering its directors and officers from April 1, 2016, to April 1, 2017.  ("Def's MSJ", ECF No. 57-1 at 6).  This D&O Policy operated on a claims-made basis.  (*Id.* at 7; "Opp. to MSJ", ECF No. 65 at 5).

Linda Heater served in the position of property manager from 1988 to August 14, 2014, for Parkside/El Centro Homeowners Association.   (Judicial Reference Second Amended Statement of Decision ("SOD")[2], ECF No. 57-4 at 66).   Upon learning Plaintiff had lost its Business Entity with the California Secretary of State, and was required to cease and desist conducting business activity, (ECF No. 57-3 at 8), Plaintiff requested all financial documents from Heater on July 31, 2014, and placed her on administrative leave, (*Id.* at 11). After requesting Heater's documents, Plaintiff's Board unanimously agreed to cease payment of any funds to Heater until the Board decided whether to proceed with criminal charges.  (*Id.* at 14).  From 1988 to 2014, Heater stole more than $300,000 from Plaintiff.  (ECF No. 57-4 at 66.).  By September 29, 2014, Plaintiff's Board unanimously passed a motion to present the information it had regarding Heater's embezzlement of funds to the El Centro Police Department, explaining a sergeant had communicated "[the Board] may have enough information to file charges."  (ECF No. 57-3 at 17).  In 2014, the Imperial County District Attorney filed a criminal action against Heater.  (Opp. to MSJ at 4). In October of 2016, Heater pled *nolo contendre* to a criminal charge of embezzlement. (Pla's Mot. for Part. Sum. Judg. at 5, 6).

Heater filed a complaint in superior court on April 5, 2016, against Plaintiff on

---

[2] The SOD was attached to the Judgment entered against Plaintiff's former directors.  (SOD at 66).  The SOD was rendered by Judge Ronald S. Prager, serving as an appointed judicial referee; Judge Christine V. Pate later signed and entered a final Judgment consistent with the SOD.  (ECF No. 23-2 at 6).

claims of misclassification as an independent contractor, failure to pay minimum wage, failure to pay at least double minimum wage, failure to pay overtime, failure to provide meal periods or pay compensation in lieu thereof, and failure to authorize and permit rest periods or pay compensation in lieu thereof. (*See* ECF No. 57-4 at 15-23). Plaintiff filed a cross-complaint that named Heater as a cross-defendant and asserted a claim of breach of fiduciary duty against her. (ECF No. 57-4 at 45). The cross-complaint also named three of Plaintiff's former directors as cross-defendants. (ECF No. 57-4 at 25).

On September 24, 2019, a Judgment on Second Amended Cross-Complaint of Parkside/El Centro Homeowners Association ("Judgment") was entered against Plaintiff's former directors but not Heater. ("Judgment", ECF No. 16-3 at 18). These former directors were responsible for supervising Heater. (ECF No. 57-4 at 66). The SOD attached to the Judgment explained the three former directors against whom judgment was entered stipulated to liability for claims that alleged "negligence, a contractual breach, a negligent breach of fiduciary duty, and other alleged negligent conduct." (SOD at 67). According to the SOD, culpability existed because Plaintiff "could not have discovered [Heater's] embezzlement because of the negligent conduct of" the former directors. (*Id.*) Following the Judgment, the three former directors assigned their rights under Defendant's D&O Policy to Plaintiff.[3] (ECF No. 65-1 at 10).

With the assigned rights of the former directors, Plaintiff presented a "Proof of Claim" to Defendant, requesting reimbursement for a loss of $688,931 incurred by the Judgment under the D&O Policy. (ECF No. 16-1 at 6). Defendant denied the claim, explaining it did not fall under the coverage of the D&O Policy. ("Denial Letter", ECF No. 1-2 at 16).

---

[3] Defendant does not challenge the legal sufficiency of the assignment. (*See* Def's MSJ).

**DISCUSSION**

## I.   MOTIONS FOR SUMMARY JUDGMENT

### 1.  Legal Standard

Federal Rule of Civil Procedure 56 delegates authority to the Court to enter summary judgment on claims or defenses that lack a factual foundation.  Rule 56(c)(a) provides that a motion for summary judgment shall be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Initially, the burden lies with the moving party to present a basis for its motion and demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  While the moving party may support its motion, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." (*Id.*)  The opposing party, in its response, cannot rely on its denials of a pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" (*Id.* at 324) (citing Fed. R. Civ. P 56(e)).  The opposing party must provide more than conclusory allegations that are unsupported by facts.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

"The court must examine the evidence in the light most favorable to the non-moving party." *United States v. Diebold, Inc.*, 369 U.S. 654. 655 (1962).  If doubt exists as to the existence of any issue of material fact, the court should deny the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The burden on the party moving for summary judgment is dependent on that party's burden of proof at trial. *See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

When the moving party would not bear the burden at trial, its burden for summary judgment can be met by "either of two methods." *Nissan Fire and Marine Ins.*, 210 F.3d at 1106.  In such cases, the moving party may

> produce affirmative evidence ... negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may ... meet its initial burden of production "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."

(*Id.* at 1105-06) (quoting *Celotex*, 477 U.S. at 325).  The moving party cannot compel the non-moving party to produce evidence for its claims or defenses by merely saying the non-moving party has failed to provide any such evidence. *Nissan Fire & Marine Ins.*, 210 F.3d at 1005.  Meaning, in a case where the moving party fails to meet its initial burden of production, the non-moving party may defeat the motion for summary judgment without producing anything.  (*Id.* at 1102-03); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).  On the other hand, if "a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins.*, 210 F.3d at 1103. Where the moving party has met its burden, the party defending the motion

> must do more than simply show that there is some metaphysical doubt as to the material facts[, but] must come forward with specific facts showing that there is a genuine dispute for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Weighing the evidence, determining credibility, and drawing inferences from the facts are roles reserved for the jury and not to be exercised by the judge. *Anderson*, 477 U.S. at 255; *Nissan Fire & Marine Ins.*, 210 F.3d at 1103 (holding when the "nonmoving party produce enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion."). "The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001);

*see Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (holding the court need not "scour the record in search of a genuine issue of triable fact.").[4]

### 2. Defendant's Motion for Summary Judgment

In support of its Motion for Summary Judgment, Defendant argues "[a]ll components of the loss … were complete and known before policy inception and the loss was not an unknown contingency that could be insured." (Def's MSJ at 13). In essence, Defendant argues a fortuity issue exists regarding the embezzlement loss. (*Id.*) Additionally, Defendant argues the "personal profit" and "dishonest acts" exclusions in the D&O Policy apply to this claim, thereby barring coverage per the language of the policy. (*Id.* at 13-14). Last, Defendant argues its D&O Policy is a claims-made policy, and Plaintiff failed to first make the claim for loss during the policy period. (*Id.* at 13)

### a. Established Loss and Fortuity Argument

Defendant argues Heater's embezzlement was an established loss, as it was discovered more than a year before the D&O Policy incepted. (Def's MSJ at 14). Defendant argues that an event must be fortuitous, or unknown, to be insurable, and therefore, an established loss is uninsurable. (*Id.* at 15). Under California law, "[i]nsurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a *contingent* or *unknown* event." Cal. Ins. Code § 22 (emphasis added). Defendant relies on Insurance Code sections 22 and 250[5] to argue events must be fortuitous, *i.e.*, contingent and unknown to be insurable under California law. (*See* Def's MSJ at 15). Based upon that premise, Defendant argues that because Plaintiff was aware of the embezzlement, and had cooperated in criminal charges against Heater, before the

---

[4] Motions for summary judgment and partial summary judgment are resolved under the same standard. *See California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).

[5] "[A]ny contingent or unknown event, whether past or future, which may damnify a person having an insurable interest, or create a liability against him, may be insured against, subject to the provisions of this code." Cal. Ins. Code § 250.

policy incepted, Plaintiff's claim is barred by lack of fortuity. (*Id.*)  In opposition, Plaintiff argues pre-policy losses are recoverable and fortuitous under a specific type of insurance policy: claims-made third party liability policies.  (Opp. to MSJ at 10).  Plaintiff further argues as of April 1, 2016, the date the policy took effect, there was no claim against the three directors and, therefore, the loss was contingent and uncertain.  (Opp. to MSJ at 11).

The Court must first determine what "triggers" coverage under the insurance policy to resolve fortuity.  *See Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45 Cal.App.4th 1, 39 (1996) (explaining that "'trigger of coverage' is a term of convenience used to describe what must happen in the policy period to give rise to insurance coverage.").  To do this, the Court must determine what type of policy Defendant issued. *See, e.g. Chu v. Canadian Indemnity Co.*, 224 Cal.App.3d 86, 95 (1990) (holding the fortuity analysis differs between first party policies and third party policies, as third party policies look to analogous concepts of "occurrence" and "accident," rather than "contingent" and "unknown," to determine fortuity).

California treats third party liability policies differently than first party policies.  *See Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 665 (1995) ("*Montrose*"). A first party policy "provides coverage for loss or damages sustained directly by the insured (e.g. life, disability, health, fire, theft and casualty insurance)[.]"  *Montrose*, 10 Cal.4th at 663.  On the other hand, third party liability policies obligate the insurer to indemnify the insured for judgments the insured becomes legally obligated to pay as damages for some harm caused by the insured.  (*Id.*)  Third party liability policies are treated differently because the inherent risk is higher, and the scope of coverage is broader. *Garvey v. State Farm Fire & Casualty Co.*, 48 Cal.3d 395, 407 (1989) ("In liability insurance, by insuring for personal liability, and agreeing to cover the insured for his own negligence, the insurer agrees to cover the insured for a broader spectrum of risks.").  One key difference between first party and third party policies is whether the "manifestation of loss" rule for triggering insurance claims applies.  *Webcore-Obayashi Joint Venture v. Zurich American Ins. Co.*, 476 F.Supp.3d 987, 993 (N.D. Cal. 2020).  A "manifestation of

loss" policy is triggered at the time "appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy had been triggered." *Montrose*, 10 Cal.4th at 674.   However, this "manifestation of loss" triggering analysis only applies to first party policies and does not apply to third party liability policies. *Webcore-Obayashi*, 476 F.Supp.3d at 993.

The California Supreme Court has held a "directors' and officers' liability policy" is a third party liability policy. *Montrose*, 10 Cal.4th at 663.  Therefore, Defendant's D&O policy will be analyzed as a third party liability policy.  Moreover, there is a distinction between "claims-made" policies and "occurrence" policies that affects the fortuity analysis. Claims-made policies cover claims "made and actually reported to the insured during the period specified in the policy", as opposed to occurrence policies, which "cover the insured for any subsequent claim arising out of an occurrence that took place during the period specified in the policy." *Burns v. Int'l Ins. Co.*, 709 F.Supp. 187, 189 (N.D. Cal. 1989). Defendant's D&O policy states:

### A. INSURING AGREEMENT

1. We will reimburse you for "loss," in excess of the Retained Limit shown in the Schedule above, which you become legally obligated to pay due to any civil claim(s):
   a. made against your "Directors" or "Officers"; and
   b. caused by a "wrongful act."
2. We will pay, in excess of the Retained Limit shown in the Schedule above, for "loss" which an "insured" becomes legally obligated to pay due to any civil claim(s):
   a. made against the "insured"; and
   b. caused by a "wrongful act."
3. This insurance applies only if a claim for "loss" is first made against any "insured" during the endorsement period.
   a. A claim for "loss by a person or organization will be deemed to have been made when notice of such claim is

received and recorded by an "insured" or by us, whichever comes first.

b. All claims for "loss" due to the same "wrongful act" or interrelated acts will be deemed to have been made at the time the first of those claims is made against any "insured."

c. Written notice given by the "insured" during the endorsement period of a "wrongful act" which may result in a claim will be considered notice of a claim made against the "insured" during the endorsement period.

("D&O Policy", ECF No. 16-3 at 13). Here, though the contract does not explicitly refer to itself as a "claims-made" policy, the language describes a claims-made policy upon which the insured may make claims for losses incurred by civil lawsuits. Moreover, the parties do not dispute that the D&O Policy is a claims-made policy. (*See* Def's MSJ at 7; Opp. to MSJ at 5).

Classifying Defendant's D&O Policy as a claims-made policy is important because indemnity under a claims-made policy is not contingent upon when the act complained of occurred, but rather when the insured notifies the insurer of a claim made against the insured for that act. *See Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 957 (9th Cir. 2002); *see also Gilliam v. American Cas. Co., of Reading, Pennsylvania*, 735 F.Supp. 345, 350 (N.D. Cal. 1990); *Brander v. Nabors*, 443 F.Supp. 764, 767 (N.D. Miss. 1978). In other words, a claims-made policy can "theoretically provide unlimited retroactive coverage." *Gilliam*, 735 F.Supp. at 349 n. 4; *see HB Dev., LLC v. W. Pac. Mut. Ins.*, 86 F.Supp.3d 1164, 1178-79 (E.D. Wash. 2015); *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 233 n.1 (3d Cir. 2006) (Holding that "[a] 'claims made' policy provides retroactive coverage for liability arising out of acts which occurred before the policy effective date provided that the claim is brought during the policy period."). These policies are retroactive in that the events that give rise to claims against the insureds often occur before inception of the policy. However, a prospective

contingency still exists in the question of whether a claim will be brought against the insured during the policy period.

It is common for claims-made policies to include provisions that limit the seemingly unchecked retroactive nature of these policies.  One way this is done is through a retroactive date, which may "restrict[] the scope of coverage to exclude coverage for claims arising from wrongful acts occurring prior to" that date.  *Fremont Indem. Co., Inc. v. California Nat. Physician's Ins. Co.*, 954 F.Supp. 1399, 1403 (C.D. Cal. 1997).  However, no retroactive date is listed in Defendant's policy.  (*See* D&O Policy).

Another means available to insurers to restrict the scope of a claims-made policy is a "prior knowledge" provision. These provisions may state that a claims-made policy "does not provide coverage if the insured had 'knowledge of such wrongful act' giving rise to the claim prior to the inception of the Policy Period, even if the claim was tendered during the Policy Period[.]"  *Associated Industries Ins. Co., Inc. v. McNicholas & McNicholas LLP*, 495 F.Supp.3d 869, 873 (C.D. Cal. 2020).  However, no prior knowledge provision is included in Defendant's policy.  (*See* D&O Policy).

Additionally, claims-made policies "can be further classified as either *claims-made-and-reported* policies, which require that claims be reported within the policy period, or general claims-made policies, which contain no such reporting requirement."  *Federal*, 307 F.3d at 955.  Here, the D&O Policy is a claims-made and reported policy because the plain language states: "The insurance applies only if a claim for 'loss' is first made against any 'insured' during the endorsement period," and, "Written notice … during the endorsement period … will be considered notice of a claim[.]"  (D&O Policy at 13).  Therefore, notice is the event that triggers coverage, not the occurrence of the underlying event.  *Federal*, 307 F.3d at 957.

Defendant relies on *Montrose* to establish the applicability of the "known or apparent" loss language of Insurance Code sections 22 and 250 to third party liability claims.  (Def's MSJ at 15).  However, the *Montrose* court clearly distinguished the occurrence-triggered General Liability Policy under review in that case from claims-made

third party liability policies, such as Defendant's policy in this case.  *Montrose*, 10 Cal.4th at 687-88 (holding claims-made policies were specifically created to insure for a period "*without regard to the timing of the damage or injury*").  Defendant argues "the discovery of the loss for which reimbursement is sought[] pre-dates the D&O Policy by at least one-year and nine months[.]" (Def's MSJ at 14). On one hand, Defendant fails to acknowledge the retroactive nature of a claims-made third party liability policy in its fortuity argument. (*See Id.*)  On the other, Defendant acknowledges that its "D&O Policy provides claims-made coverage."  (*Id*. at 7)

Furthermore, Defendant improperly relies on *Upper Deck Co. v. Endurance American Specialty Ins. Co.*, No. 10-CV-1032-JM, 2011 WL 6396413 (S.D. Cal., Dec. 15, 2011) ("*Upper Deck*") to apply the fortuity doctrine to claims-made policies, which are retroactive in nature.  Defendant interprets the *Upper Deck* holding to mean "insurance only applies to prospective damage, not damage that is certain or has already occurred." (Def's MSJ at 17).  This is an erroneous generalization of the rule applied in *Upper Deck*. In *Upper Deck*, like in this case, the court stated the defendant's insurance policy was "issued on a claims made and reported basis for the policy period[.]"  *Upper Deck Co. v. Endurance American Specialty Ins. Co.*, No. 10-CV-1032-JM, 2011 WL 6396413, at *1 (S.D. Cal., Dec. 15, 2011).  It is accurate to say that the *Upper Deck* court applied the fortuity doctrine to a third party liability, claims-made insurance policy to bar coverage. (*Id.* at *7) However, the court explained its rationale, stating, "[I]t is contrary to public policy to permit a wrongdoer like Upper Deck to retain the benefit[.]"  (*Id.*)  There, the "wrongdoer" "intentionally and willfully engaged in a scheme to violate the intellectual property rights of [the plaintiff] for financial gain."  (*Id.*)  Here, the individual who is accused of intentional and willful wrong is Heater, which distinguishes this case because Heater has been terminated and will not receive the "benefit" (i.e., insurance payout) of her wrongdoing.  (Pla's Mot. for Part. Sum. Judg. at 9).

The Court notes *Upper Deck* held "third party liability insurance does not protect against nonaccidental harm inflicted by the insured." *Upper Deck*, No. 10-CV-1032-JM,

2011 WL 6396413, at *1.  However, in *Upper Deck*, the intentional wrongdoer was seeking compensation for the consequences of its actions. Here, Heater is the intentional wrongdoer and does not stand to benefit from the insurance policy.

In this case, the parties do not dispute that Defendant's D&O Policy is a third party, claims-made liability policy, which is inherently retroactive as to the events giving rise to the claim. In addition, while an intentional wrongdoer exists in the form of Heater and her embezzlement, she does not stand to benefit from the adjudication here as Plaintiff has been assigned all rights of the former directors under the policy.  (ECF No. 65-1 at 10). Therefore, because a contingency existed as to whether a claim would be made against directors or officers during the policy period and Defendant's D&O Policy contains neither a retroactive date nor a "prior knowledge" provision, the Court finds this claim is not barred by fortuity.

### b.  Enumerated Exclusions in the D&O Policy

Defendant argues several exclusions enumerated in the D&O Policy bar coverage in this case, including exclusions (g) personal profit and (i) dishonest acts, as well as the bar on recovery for "interrelated acts."  (Def's MSJ at 13).

Interpretation of the language of an insurance policy is a question of law, and the court must make an independent determination of the meaning of the language.  *See Western Mutual Ins. Co. v. Yamamoto*, 29 Cal.App.4th 1474, 1481 (1994); *see also Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.*, 42 Cal.App.4th 121, 125 (1996) (holding that "[a]bsent a *factual* dispute as to the meaning of policy language, [] the interpretation, construction and application of an insurance contract is strictly an issue of law."); *Waller v. Truck Ins. Exchange,* 11 Cal.4th 1, 18 (1995).

The California Supreme Court has held:

> Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ.Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.,* § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and

popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.,* § 1644), controls judicial interpretation. (*Id.,* § 1638.) Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.] [¶] If there is ambiguity, however, it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. (Civ.Code, § 1649.) If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. (*Id.,* § 1654.)

*AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 821-22 (1990).

Simply stated, ambiguity in an insurance policy's language will be "declared and construed against the insurer in order to protect the insured's reasonable expectation of coverage." *Cnty. of San Diego v. Ace Prop. & Cas. Ins. Co.*, 37 Cal.4th 406, 415 (2005) (citing *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal.4th 27, 37 (1994)); *see Gray v. Zurich Ins. Co.*, 65 Cal.2d 253, 269 (1966); *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 437 (1956). In California, insurance policy language is ambiguous when it is "capable of two or more constructions, both of which are reasonable." *Waller*, 11 Cal.4th at 18. Moreover, "words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them." *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 807 (1982). However, before concluding that an ambiguity exists and will be construed against the insurer, the court must first determine whether coverage under such a construction would be consistent with the insured's "*objectively reasonable expectations*." *Jordan v. Allstate Ins. Co.*, 116 Cal.App.4th 1206, 1213-14 (2004) (citing *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265 (1992)) (emphasis in original). To ensure this, the disputed language in the policy must be viewed in the context of its intended function in the policy. (*Id.*)

Ambiguity in the terms of contract is not always a triable issue of a fact for purposes of summary judgment; sometimes it is an issue of law. For purposes of summary judgment,

[i]nterpretation of the contract is an issue of law if a) the contract is not ambiguous, or b) the contract is ambiguous but no parol evidence is

admitted or the parol evidence is not in conflict. Furthermore, when two equally plausible interpretations of the language of a contract may be made, parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory.

*Centigram Argentina, S.A. v. Centigram Inc.,* 60 F.Supp.2d 1003, 1007 (N.D. Cal. 1999) (internal citations and quotations omitted).  Parol evidence is that which demonstrates oral or written prior and contemporaneous agreements. Restatement (First) of Contracts § 237 (1932).  Neither Plaintiff nor Defendant assert any evidence of an oral or written contemporaneous agreement. (*See* Opp. to MSJ; *see also* Def's MSJ).

Though insurance policies have their "special features, they are still contracts to which the ordinary rules of contractual interpretation apply."  *Palmer v. Truck Ins. Exchange*, 21 Cal.4th 1109, 1115 (1999) (quoting *Bank of the West*, 2 Cal.4th at 1264); *see City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 68 Cal. App. 4th 445, 473 (1998) (holding that while interpreting the language of a contract, "[it] must be construed as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable.") (citing Cal. Civ. Code § 1641).

Here, the language of Defendant's D&O Policy provides definitions of terms contained therein, including:

**E. DEFINITIONS**

4. "Directors" means all of your directors or members of your Board of Governors or Directors or trustees.

5. "Insured" means any person who has been, now is, or shall become an "Officer" or "Director." It also includes the estate, heirs, or legal representatives of an "Officer" or "Director" who dies or becomes incompetent.

7. "Officers" means the holders of the titles or positions specified by your charter or bylaws. "Officers" also means employees, committee members or any other person *acting on the*

*behalf of or at the direction of* the Board of Directors or an "Officer."

(D&O Policy at 16) (emphasis added).

### i. Whether Heater Can be Considered an "Insured"

According to Defendant, the D&O Policy's exclusions (g), (i), and the bar on recovery for "interrelated acts" all require Heater be an "insured" to apply to this case. (*See* Def's MSJ at 7; D&O Policy at 13, 14). Defendant argues the D&O Policy's definition of "insureds" includes "officers," which include employees. (Def's MSJ at 13, 14). Defendant goes on to argue that because Heater was an employee of Parkside/El Centro Homeowners Association, she is considered an "insured." (*Id.*) Therefore, if Heater is not an "insured" under the D&O Policy, the rest of Defendant's arguments for summary judgment fail. Plaintiff argues the correct interpretation of the D&O Policy is that employees must be acting "on behalf of or at the direction of" directors or officers to be considered an "insured." (Opp. to MSJ at 18).

According to the D&O Policy's definition, past directors and officers are considered insureds and, likewise, claims made against past directors and officers may be coverable. (D&O Policy at 16). Thus, the analysis for determining whether Heater is an "insured" begins with answering whether she was a director or officer. It is not disputed that Heater was employed by Plaintiff. (Def's MSJ at 11; Compl. at ¶ 20). Therefore, the question is whether the phrase, "acting on behalf of or at the direction of the Board of Directors or an 'Officer[,]'" modifies the word "employee" in the D&O Policy's definition of an officer. (D&O Policy at 16).

"A longstanding rule of statutory construction—the 'last antecedent rule'—provides that 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.'" *White v. County of Sacramento*, 31 Cal.3d 676, 680 (1982) (quoting *Board of Port Com'rs. v. Williams*, 9 Cal.2d 381, 389 (1937)); *see Wilde v. City of Dunsmuir*, 9 Cal.5th 1105, 1127 (2020) (holding "as a very general rule, we understand a

qualifying phrase to apply only to the word or phrase that immediately precedes it and not to the other words or phrases that appear earlier in a list or series.").

While the last antecedent rule is good law, its applicability is conditional upon certain requirements and exceptions. *Wilde*, 9 Cal.5th at 1127. For example, for the rule to be applied, there must exist the "presence of multiple antecedents." *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.*, 230 Cal.App.4th 859, 872 (2014). In the clause at issue here, the D&O Policy lists "employees, committee members or any other person[.]" (D&O Policy at 16). As three antecedents are present in the clause, this requirement is met.

However, the last antecedent rule has been described as "merely an aid to construction," meaning the rule must be set aside when "the clear intent of the parties is opposed to the application of the rule." *Anderson v. State Farm Mut. Auto. Ins. Co.*, 270 Cal.App.2d 346, 249-50 (1969). One exception to the last antecedent rule is "when several words are followed by a clause that applies as much to the first and other words as to the last, 'the natural construction of the language demands that the clause be read as applicable to all.'" *Renee J. v. Superior Court*, 26 Cal.4th 735, 743 (2001) (quoting *Wholesale T. Dealers v. Nat'l etc. Co.*, 11 Cal.2d 634, 659 (1938)). Put simply, this exception applies "when the qualifying language applies just as naturally to the earlier items in a list as the later items." *Wilde*, 9 Cal.5th at 1127 (citing *Renee J.*, 26 Cal.4th at 743). Therefore, to analyze the clause at issue in this case, the Court must ask whether the phrase, "acting on the behalf of or at the direction of the Board of Directors or an 'Officer,'" applies just as naturally to "employee" as it does to "any other person." (D&O Policy at 16).

Applying the modifier directly to the antecedent, the clause reads: "'Officers' also means employees … acting on behalf of or at the direction of the Board of Directors or an 'Officer.'" (*Id.*) Without applying the modifier, the contract would construe "officers" and "employees" to be synonymous. Because the D&O Policy is designed to reimburse its insureds for civil claims made against its "'Directors' or 'Officers'", (D&O Policy at 13), it is reasonable to conclude the policy would contractually extend coverage to employees

acting on behalf of a director or officer.  However, it is also a reasonable interpretation of the language of the D&O Policy's definition to believe it was meant to cover all employees, in the spirit of expanding the insured's reasonable expectation of coverage.  *See Ace Prop. & Cas. Ins. Co.*, 37 Cal.4th at 415.  Where an insured had an "objectively reasonable expectation there would be coverage under the policy consistent with the ambiguity," the ambiguity must be construed against the insurer.  *Clarendon America Ins. Co. v. North American Capacity Ins. Co.*, 186 Cal.App.4th 556, 573 (2010).

The "*reasonable expectation*" of coverage denotes foresight on behalf of the insureds.  *Jordan*, 116 Cal.App.4th at 1213-14.  Present claim aside, to construe all "employees" to be "officers" would generally expand the scope of the D&O Policy's coverage.  Meaning, to apply the last antecedent rule, and sever the modifier from the term "employees," would apply the D&O Policy to more individuals than if the modifier were attached.  Plaintiff's reasonable expectation of coverage would have been greater by applying Defendant's interpretation of the clause.  In this way, Plaintiff's argument that "employees" must be acting on the behalf of or at the direction of the Board of Directors or Officers, (Opp. to MSJ at 19), contradicts its own use of *Montrose* to argue the Court must rule "in favor of coverage."  (*Id.* at 20).

Because two or more reasonable interpretations of the term exist, Defendant's D&O Policy is ambiguous as to the definition of an "officer."  *Waller* 11 Cal.4th at 18.  As a matter of policy, when ambiguous language exists, insurance contracts are to be "construed in favor of coverage."  *Montrose*, 10 Cal.4th at 668.  Defendant's interpretation of the clause, by defining all "employees" as "officers," is most favorable toward expanding coverage.  Therefore, the Court will interpret the D&O Policy to include "employees" within the definition of "officers."  Because it is uncontested that Heater was employed by Plaintiff, (Def's MSJ. at 11; Compl. at ¶ 20), and because the plain language of the D&O Policy states, "'Insured' means any person who has been, now is, or shall become an 'Officer'", the Court finds Heater is an "insured" as a matter of law.

### ii. Exclusion (i) – Bar on Claims Establishing an Officer's Affirmative Dishonesty or Actual Intent to Deceive or Defraud

Defendant's D&O Policy enumerates several exclusions that can bar coverage, even from an "insured", including exclusion (i), which reads, in pertinent part:

### B. EXCLUSIONS

**1.** This insurance does not apply to any claim:

**i.** if judgment adverse to your "Directors" or "Officers," *in "suit" brought against them*, will establish that their affirmative dishonesty or actual intent to deceive or defraud was material to the cause of action so adjudicated.

(D&O Policy at 14) (emphasis added). Defendant argues Heater was an "officer," that a "suit" was brought against her in the form of a cross-complaint, and that there was an adverse judgment from the cross-complaint that established her dishonesty. (Def's MSJ at 25). The underlying judgment was entered after

the three former director cross-defendants stipulated to liability on the claims asserted against them in the Second Amended Cross-complaint (SACC), only to the extent that the SACC alleges conduct arises to negligence, a contractual breach, a negligent breach of fiduciary duty, and other alleged negligent conduct.

(SOD at 67). Defendant argues Heater's embezzlement was "material to the negligence allegations against the former directors." (Def's MSJ at 25). To support this, Defendant points to statements in the SOD, including:

Heater intentionally and negligently did not provide bank statements to the Board, and the Board member cross-defendants, in violation of their fiduciary duties and negligently, signed blank or incomplete checks and did not review back-up bank documents[.]

(SOD at 66). The Judgment goes on to say:

The Association discovered that Heater had been stealing at least $1000 per month from the early 1990's through 2009 for a total amount of

3:20-cv-01732-JAH-DDL

$338,324.95. The Association could not have discovered this embezzlement because of the negligent conduct of Erlenbusch, Mendez, and Devoy.

(*Id.*) "Suit" is defined in Defendant's D&O Policy as "a civil proceeding in which damages to which this insurance applies are alleged." (D&O Policy at 16). Plaintiff argues Defendant has offered no civil proceeding that can establish Heater's affirmative dishonesty. (Opp. to MSJ at 17). Plaintiff asserts exclusion (i) only applies where a claim is brought against the individual insured whose dishonesty or intent to deceive is being established. (*Id.* at 16, 17). Furthermore, Plaintiff contends Heater made no claim and never became legally obligated to pay a loss due to any civil claim. (*Id.*) The only insurance claim made, according to Plaintiff, was for the Judgment against the three directors. (*Id.*)

The Judgment arose out of Plaintiff's rights and remedies to bring a civil claim of negligence against its former directors. (ECF No. 57-4 at 45). In addition, after the former directors stipulated to liability, there was a judgment by a court of law in the United States. (Judgment at 18). Not only was the Judgment a civil proceeding, but the damages alleged in that proceeding stemmed from the same embezzlement that is the underlying cause of the insurance claim. (SOD at 66). However, for exclusion (i) of the D&O Policy to apply, the adverse judgment must "*establish*" Heater's "affirmative dishonesty or actual intent to deceive or defraud was material to the cause of action so adjudicated." (D&O Policy at 14) (emphasis added). Therefore, the Court must determine whether Heater's affirmative dishonesty or actual intent to deceive can be *established* by third parties (cross-defendant directors) stipulating to negligence and breach of fiduciary duty.

Plaintiff argues the Judgment does not establish Heater's dishonesty, or intent to deceive or defraud, because she was dismissed from the suit and was not a party when judgment was entered. (Opp. to MSJ at 17). In determining whether Heater's affirmative dishonesty or actual intent to deceive was *established* by the Judgment, the Court must look at the claims upon which judgment was entered. It is long-established that

"negligence is an unintentional tort, a failure to exercise the degree of care in a given situation that a reasonable man under similar circumstances would exercise to protect others from harm." *Donnelly v. Southern Pac. Co.*, 18 Cal.2d 863, 869 (1941). Here, the Superior Court found Plaintiff's damages were caused by "the negligent conduct" of Dale Erlenbusch, Scott Devoy, and Hernan Mendez, against whom the Judgment was entered. (SOD at 66). However, the Judgment did not require the court to find Heater's "affirmative dishonesty" or "actual intent to deceive." (*See Donnelly*, 18 Cal.2d at 869) ("If conduct is negligent, it is not willful; if it is willful, it is not negligent.").

Moreover, the Judgment lacked any claim that requires a showing of intent and was not entered against Heater. (*See* Judgment). In addition, Heater either did not answer the cross-complaint or Defendant chose not to include her response in its motion. (*See* ECF No. 57-4). Because (1) the judgment was not entered against Heater; (2) the judgment did not require a finding of intent on the part of Heater; and, (3) no defense is offered on her behalf, the only way to establish her affirmative dishonesty is by inference. This Court is not convinced that an inference can "establish" affirmative dishonesty or actual intent to deceive or defraud according to a plain reading of the D&O Policy. Accordingly, the Court finds, as a matter of law, exclusion (i) of the D&O Policy does not bar coverage in this case.

### iii. Exclusion (g) – Bar on an "Insured" Gaining Personal Profit

Another enumerated exclusion under Defendant's D&O Policy states:

> **B. EXCLUSIONS**
> **2.** This insurance does not apply to any claim:
> **g.** due to an "insured" gaining any personal profit or remuneration or advantage to which the "insured" is not legally entitled.

(D&O Policy at 14). Defendant argues Heater, as an "insured," gained personal profit from her embezzlement, which was established by the Judgment and SOD, and therefore coverage is barred by exclusion (g). (Def's MSJ at 19). However, Plaintiff argues

exclusion (g) does not apply because the Judgment was based on the negligence of Plaintiff's former directors, not Heater's embezzlement.  (Opp. to MSJ at 17).

In exclusion (g), the words "due to" suggest causation.  Meaning, the claim triggering coverage under the policy cannot be "due to" or a result of an insured's illegal personal profiting.  (*Id.*)  The legal claim upon which judgment was granted triggered the insurance claim, which arose out of the negligence of Dale Erlenbusch, Scott Devoy, and Hernan Mendez.  (SOD at 66).  The Judgment was neither against Heater, nor did the elements of negligence require the court to find her actions illegal.  *See, e.g., Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 413 n. 21 (1992).  Furthermore, the Judgment explains:

> The parties agreed that the directors did not act in the best interests of the Association "and with such care, including reasonable inquiry, as an ordinary prudent person in a like position would use under similar circumstances as alleged in the SADD, the Parties (agreed) that (the director) did not have any malicious or actual intent to deceive or defraud the Association during the period alleged in the SACC." The parties agreed that the directors did not gain any personal profit. "*The Parties further (agreed) that the appointed referee shall make necessary findings as to liability and causation consistent with this Agreement on liability and causation* and consistent with the allegations of the SACC, which issues are no longer being contested by (the cross-defendant directors)[.]"

(*Id.* at 67-68) (emphasis added).  In other words, there was no adversarial fact finding process that affected the Judgment.  As a result of Dale Erlenbusch, Scott Devoy, and Hernan Mendez stipulating to liability, the Superior Court entered a judgment against them for negligence.  (Judgment at 19-21; SOD at 67).  Negligence only requires a showing that the defendant had a duty, breached that duty, and that its breach was a proximate cause to actual damages.  *Peredia v. HR Mobile Services, Inc.*, 25 Cal.App.5th 680, 687 (2018).  The only relevance of Ms. Heater's conduct to the Judgment on the cross-complaint was in relation to proving damages.  In a negligence claim, the plaintiff must prove "damages with reasonable certainty" and "[t]he extent of such damage must be proven as a fact."  *Fields v. Riley*, 1 Cal.App.3d 308, 313 (1969).  Thus, the Superior Court's Judgment

entered against the directors for negligence did not require any finding pertaining to Heater's personal gain or the illegality of that gain. It would be reasonable for a party to conclude the Plaintiff's cross-complaint against its directors was "due to" their negligence, not Heater's embezzlement. The Court finds that Heater's personal gain is irrelevant to the negligence claim against the former directors.

Heater's conduct, in reality, was not accidental. As previously acknowledged, it is undisputed by the parties that Heater embezzled money from Plaintiff and personally profited from that embezzlement. (Pla's Mot. for Part. Sum. Judg. at 8; Def's MSJ at 7). Therefore, another reasonable interpretation of exclusion (g) is to construe "due to" to extend to the events that bring about a cause of action, not just the facts needed to prove elements of a claim. In this case, the damages directly relate to Heater's embezzlement, (SOD at 67), and without damages, there would not be negligence. Accordingly, another reasonable conclusion is that the cross-complaint was brought "due to" Heater's illegal personal gain. Because there are two or more reasonable constructions of the words "due to" as applied to this case, exclusion (g) is ambiguous.

In this case, interpreting the words "due to" in a narrow sense as to relate only to claims that require a showing of illegal personal gain provides the broadest reasonable expectation of coverage under the plain language of the policy. *Titan Corp. v. Aetna Casualty & Surety Co.*, 22 Cal.App.4th 457, 469 (1994) (citing *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912 (1986) (holding ambiguity should be resolved to protect the insured's "*reasonable* expectation of coverage.")). Therefore, the Court finds, as a matter of law, exclusion (g) does not bar coverage in this case.

### iv.  Insuring Agreement A(3)(b) – Bar on Interrelated Claims

Defendant argues Plaintiff's claim is barred from coverage because the claim was first made "in a demand against Heater through the police" in 2014. (Def's MSJ at 18).

As the fortuity portion of this argument has been addressed,[6] the Court now looks to the policy language to determine whether the "interrelated acts" provision bars coverage because of the prior criminal action against Heater.  Defendant's D&O Policy states:

> **A. INSURING AGREEMENT**
> **3.** This insurance applies only if a claim for "loss" is first made against any "insured" during the endorsement period.
> **b.** All claims for "loss" due to the same "wrongful act" or interrelated acts will be deemed to have been made at the time the first of those claims is made against any "insured."

(D&O Policy at 13).  The "interrelated acts" language of Defendant's D&O policy has been reviewed by California courts in other cases.  However, unlike the D&O policy under review here, other drafters have chosen to define "claims" in their contracts.  *See, e.g., Homestead Ins. Co. v. American Empire Surplus Lines Ins. Co.*, 44 Cal.App.4th 1297, 1305 (1996).  Nevertheless, the test for relatedness of claims in California is "whether a claim is either logically or causally related to another claim." *Friedman Prof. Management Co., Inc. v. Norcal Mutual Ins. Co.*, 120 Cal.App.4th 17, 21-22 (2004).

As discussed earlier, construing the ambiguous language of the contract in favor of expanding the insured's reasonable expectation of coverage, Heater is an "insured." Moreover, Heater's embezzlement was discovered by Plaintiff in 2014.  (ECF No. 57-3 at 17).  As a result of Plaintiff reporting the embezzlement to law enforcement authorities, there was a criminal charge of embezzlement brought against her, (Opp. to MSJ at 4), to which she pled *nolo contendre*, (Pla's Mot. for Part. Sum. Judg. at 5, 6).  The underlying cause of action that triggered Plaintiff's Proof of Claim under the D&O Policy was based on Heater's embezzlement.  (SOD at 66).  The criminal charge and the subsequent lawsuit against the former directors are based on the interrelated act of Heater's embezzlement.

---

[6] *See infra* I.2.a.

Therefore, the question for the Court is whether the criminal proceedings against Heater qualify as claim for loss that is interrelated to the negligence of the three former directors.

In Defendant's D&O policy—to determine what constitutes a "claim" under the bar on interrelated claims provision—the Court must look to the context of the language in the instrument as a whole. *See Ace Property & Casualty Ins. Co.*, 37 Cal.4th at 415 (quoting *Bank of the West*, 2 Cal.4th at 1265). Defendant's D&O Policy states at the outset, "We will reimburse you for … any *civil* claim(s)[.]" (D&O Policy at 13) (emphasis added). Subsequently, section 3 of the D&O Policy omits the "civil" descriptor and simply refers to a "claim for 'loss[.]'" (*Id.*) In the context of "loss" being defined as the insured becoming "legally obligated to pay … any civil claims(s)", it would be reasonable to expect the term "claim" in section 3 to refer to *civil* claims. (*Id.*) Moreover, the bar on interrelated claims provision of the D&O Policy is contained within section 3, which may be reasonably interpreted (in the context of the instrument as a whole) to refer specifically to interrelated *civil* claims. The Court also notes "claim" has been defined as: "A demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a *civil* action specifying what relief the plaintiff asks for." *Claim*, Black's Law Dictionary (11th ed. 2019) (emphasis added). This definition does not include criminal charges or pleas.

On the other hand, "claims" is not modified by a descriptor, such as "civil" or "criminal" or both, in section A(3)(b). It is ambiguous whether "claims" includes criminal charges, even in the context of the language in the instrument as a whole. As with the other ambiguous exclusions, the Court must find in favor of expanding the reasonable expectation of coverage. *Titan Corp.*, Cal.App.4th at 469. Here, a narrower interpretation of "claims" in section A(3)(b), which views the term in light of the instrument as a whole to apply only to *civil* claims, would provide the most coverage. Therefore, the Court finds, as a matter of law, that section A(3)(b), the D&O Policy's exclusion of interrelated claims, only applies to interrelated *civil* claims. Accordingly, section A(3)(b) does not bar coverage

in this case because the prior interrelated claim asserted in Defendant's argument is criminal.

Therefore, because (1) Plaintiff's claim is not barred by fortuity; (2) exclusions (g) and (i) of Defendant's D&O Policy do not apply to these facts, and (3) Heater's criminal conviction is not an interrelated claim based on a reasonable construction of the contract, Defendant's Motion for Summary Judgment is **DENIED**.

### 3. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's Motion for Partial Summary Judgment asks the Court to find Heater was not an "insured" or an "officer" during the period she was embezzling money. (Pla's Mot. for Part. Sum. Judg at 7). As discussed in detail above, the Court finds Heater is an "insured" as a matter of law. Accordingly, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment.

## II.   PLAINTIFF'S MOTION TO AMEND

### 1. Legal Standard

According to Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course within twenty-one days of service of a motion under Rule 12(b). Otherwise, a party must obtain leave of the court or written consent from the adverse party to amend. Fed. R. Civ. P. 15(a); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1061 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). Leave to amend "shall be freely given when justice so requires." *Forman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)).

In general, the policy behind Rule 15(a)(2) that "[t]he court should freely give leave when justice so requires" is "to be applied with extreme liberality." *Eminence Capital, LLC*, 316 F.3d at 1051. This policy is applied liberally because the underlying purpose of Rule 15(a) is to "facilitate decisions on the merits, rather than on technicalities or pleadings." *James v. Pliler*, 269 F.3d 1124, 1126 (9th Cir. 2001) (citing *United States v. Webb*, 655 F.2d 977, 979-80 (9th Cir. 1981)). The Ninth Circuit has held four factors govern the "propriety of a motion under Rule 15": "(1) undue delay, (2) bad

faith, (3) futility of amendment, and (4) prejudice to the opponent." *Forman*, 371 U.S. at 182; *Yakama Indian Nation v. State of Wash. Dept. of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999).  Prejudice is the most important concern.  *Eminence Capital, LLC*, 316 F.3d at 1052.  However, the responding party bears the burden of demonstrating prejudice. *DCD Programs, Ltd. v. Leighton*, 883 F.2d 183, 187 (9th Cir. 1987).  When the responding party fails to demonstrate prejudice and there lacks a strong showing of any other factor, trial courts are presumed to grant leave to amend.  *Eminence Capital, LLC*, 316 F.3d at 1052 (internal citation omitted); *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999).  However, this standard changes, and requires a party to demonstrate "good cause" to amend, when the party's motion is filed after the deadline set forth in the pretrial order.  Fed. R. Civ. P. 16(b).

### 2. Analysis

Plaintiff seeks leave to amend its complaint to add a cause of action of fraud.  ("Prop. Amend. Compl", ECF 23-2 at 10).  In opposition, Defendant argues Plaintiff's request to amend should be denied as futile because the cause of action for fraud would not survive a motion to dismiss.  ("Def's Opp. to Mot. to Amend", ECF No. 30 at 9).

The futility of amendment can justify denial of a motion for leave to amend, regardless of whether other factors are applicable.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  A proposed amended pleading is futile if it would not be considered a legally sufficient pleading, the same standard found in Federal Rule of Civil Procedure 12(b)(6).  *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Rule 12(b)(6) challenges the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may be dismissed as a matter of law because of a "lack of a cognizable legal theory or insufficient facts under a cognizable legal claim".  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). If the plaintiff's complaint fails to present a cognizable legal theory that shows the plaintiff may be entitled to the relief sought by the complaint, or alternatively presents a legal theory but fails to plead essential facts under that theory, the complaint must be dismissed. *Robertson*,

749 F.2d at 534.  Although Rule 12(b)(6) does not require detailed essential facts, it must plead sufficient facts that, if true, "raise a right to relief above speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  In light of that standard, Plaintiff's Proposed Amended Complaint must state a cognizable theory and assert sufficient facts that, if true, would provide a right to relief.

Fraud has a heightened pleading standard compared to other causes of actions.  Fed. R. Civ. P. 9(b).  Federal Rule of Civil Procedure 9(b) requires that, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud[.]"  Any allegations of fraud that do not meet the Rule 9 standard should be "disregarded" or "stripped" from the claim.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Rule 9(b) requires that the circumstances constituting alleged fraud "be 'specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)).  Moreover, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Plaintiff's proposed claim of fraud is based on parties interpreting the D&O Policy's definition of "Officer" differently.  (Prop. Amend. Compl. at 10).  In support of its claim of fraud, Plaintiff alleges "Travelers did not intend and did not in fact apply the 'conduct' condition of [D&O Policy's definition of an 'Officer'] to 'employees' or 'committee members', but only to 'other persons[.]'"  (*Id.* at 11)  There exists a cause of action for parties aggrieved by differing and competing interpretations of ambiguous language in a binding contract, and that cause of action is breach of contract.  *See* Restatement (Second) of Contracts § 236 cmt. a (1979).

Fraud requires a showing of "false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (quotations omitted).  The only "false representation" Plaintiff alleges in its

Proposed Amended Complaint is the language of the definition of an "Officer" contained in the D&O Policy. (*See* Prop. Amend. Compl. at 10, 11). Defendant argues, in opposition to this motion, that policy language is not "a false representation; it is a mutually agreed upon term in a contract between the parties." (Def's Opp. to Mot. to Amend at 13, 14) (citing *Seattlehaunts, LLC v. Thomas Family Farm*, LLC, 2020 U.S. Dist. LEXIS 166730 (W.D. Wash. Sept. 11, 2020)). The Court agrees. Fraud requires a falsity to exist and, where both parties read, reviewed, and agreed to the terms in a contract, and those terms have not been modified subsequent to that agreement, the terms cannot be false. They are binding. Therefore, the remedy for a dispute over the term is breach of contract. The Court finds Plaintiff's Proposed Amended Complaint fails to allege a cognizable legal theory. *Robertson*, 749 F.2d at 534. Accordingly, Plaintiff's Motion to Amend is **DENIED**.

**CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED:

1. Defendant's requests for Judicial Notice, (ECF No. 57-4 at 1; ECF No. 20), are **GRANTED**.

2. Plaintiff's Motion for Partial Summary Judgment is **DENIED** pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1.

3. Plaintiff's Motion to Amend is **DENIED.**

4. Defendant's Motion for Summary Judgment is **DENIED** pursuant to Federal Rule of Civil Procedure 56.

**IT IS SO ORDERED.**

DATED: March 29, 2023

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE